Opinion issued March 12, 2013



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-01105-CV

————————————

## IN RE PINNACLE ENGINEERING, INC., PINNACLE PROJECT SERVICES, INC., JEFFREY A. LIGGET, AND TERRENCE F. TOWNEND, Relators

---

**On Appeal from the 55th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-07373**

---

## O P I N I O N

Relators, Pinnacle Engineering, Inc. ("PEI"), Pinnacle Project Services, Inc.

("PPSI"), Jeffery A. Liggett, and Terence F. Townend, have filed a petition for

writ of mandamus challenging the trial court's order in the underlying case[1] requiring that they turn over certain computer and network server hard drives and native-format documents. Relators contend that the trial court abused its discretion by compelling discovery without the required evidentiary showing or procedural protections, including "restrictions, limitations or instructions as to what may be done with [their] electronic storage devices or the data." *See In re Weekley Homes*, *L.P.*, 295 S.W.3d 309 (Tex. 2009). We conditionally grant the petition.

## Background

Real party in interest, Raymond G. Houde, and Liggett and Townend were co-shareholders and employees of two privately-held corporations, PEI and PPSI. In January 2011, after PEI and PPSI terminated his employment, Houde sued them for breach of contract, breach of fiduciary duty, shareholder oppression, civil conspiracy, and declaratory judgment. PEI and PPSI counter-claimed against Houde for fraud and rescission. At the center of the parties' dispute are allegations that Houde misrepresented his educational background when he joined the companies. Upon termination of his employment, and pursuant to a shareholder agreement, PEI and PPSI bought back Houde's shares in the companies.

---

[1] The underlying case is *Houde v. Pinnacle Engineering, Inc.*, No. 2011-07373, in the 55th District Court of Harris County, Texas, the Honorable Jeff Shadwick presiding.

In May 2011, Houde served requests for production on the various defendants.  Among other things, Houde sought from PEI the production of:

1. All correspondence or other items by and between [PEI] and Houde prior to October 9, 2003 that mention, concern, or relate to Houde's employment or ownership in [PEI].

2. All correspondence or other items by and between [PEI] from October 9, 2003 to January 17, 2011, that mention, refer or concern Houde's employment or ownership in [PEI].

3. All documents reflecting or concerning [PEI's] investigation of Houde's educational background prior to October 9, 2003.

4. All documents reflecting or concerning [PEI's] investigation of Houde's educational background from and after October 9, 2003 to January 17, 2011.

5. All emails by and between employees of [PEI] that mention, concern or relate to Houde's educational background.

6. All emails by and between Jeffrey A. Liggett and Terence F. Townend that mention, concern or relate to Houde's educational background.

Houde made the same or similar requests of PPSI, Liggett, and Townend, seeking documents and communications relating to Houde's employment or ownership interest in PEI and PPSI, Houde's educational background, and PEI and PPSI's investigation into Houde's educational background.  Houde also sought the production of computer hard drives from the laptops, desktops, Dell notebooks, and tablets of Liggett, Townend, and Pete Cruz.  And he sought the "network server(s) utilized for electronic data" by all three men from 2009 to 2011.  Relators

3

objected, and, after Houde filed a motion to compel discovery in September 2011, they amended their objections and declared that they had produced the responsive documents in their possession "after a diligent search."

Specifically, relators objected to the production of their computer and network server hard drives, asserting that the requests were overly broad, sought irrelevant information, sought the production of "privileged, private, confidential and/or proprietary information"[2] and revealed that Houde was attempting "to rummage through a virtual electronic file cabinet of correspondence, which is an impermissible fishing expedition that, if permitted, would constitute an abuse of discretion."[3]

The trial court issued orders on October 3, 2011 and January 20, 2012 granting in part Houde's motion to compel discovery, but sustaining Liggett and Townend's objections to Houde's motions to compel production of their computer hard drives. As to the requests for the production of computer hard drives and network server hard drives from PEI and PPSI, the court also issued an order granting in part Houde's motion to compel discovery on October 3, 2011 and January 23, 2012. In both orders relating to PEI and PPSI, the trial court did not

---

[2]     *See* TEX. R. CIV. P. 196.4.

[3]     *In re Weekley Homes*, 295 S.W.3d 309 (Tex. 2009).

sustain or deny the objections to the production of the computer and network-server hard drives, but instead noted that "plaintiff withdrew these at the hearing."

On November 19, 2012, Houde filed a motion to compel the production of "forensic images of key computers and obtain critical documents in native format with all associated metadata." He asserted that this electronic discovery was "key to the central issue of this case," he had been unable to obtain the discovery "despite exhausting all other less intrusive methods of discovery," "[i]t has become clear that the only place that information pertaining to this issue can be found is on Defendants' electronic storage devices," and "[d]efendants have failed or refused to produce communications . . . and refuse to allow Plaintiff to access their electronic storage devices to search for the requested communications and documents." Houde complained that the defendants had not produced any hardcopy documents from the relevant time period and had "gone to great lengths to prevent Houde from examining the most likely place that communications and documents would exist regarding the hiring of Houde – Defendants' computers and server(s)." He asserted that "only Defendants and, upon information and belief, their 'consulting only' computer forensic expert, have been able to view the correspondence that was actually exchanged during this time." As to the native format of certain documents, Houde asserted that relators had refused to provide him with access to the native files and associated metadata for copies of two

5

Houde resumes that had been referenced in depositions and motions. In his 2012 motion to compel, Houde asked the trial court to compel relators to produce:

1. a forensic image of the hard drives of the computer(s) used by Liggett from 2001–2006

2. a forensic image of the hard drives of the computer(s) used by Townend from 2001–2006

3. a forensic image of the hard drives of the computer(s) used by Pete Cruz from 2001–2006

4. a forensic image of the network server for Pinnacle

5. native files of all of Houde's alleged "resumes."

Houde offered to cover the expense of the forensic examination, and he argued that the information sought could not be obtained from another source because the defendants had testified that many documents no longer existed in paper form. Houde asserted that the electronically stored information would show when the various resumes and related documents were created and sent to relators, information that was not available from the production of the physical documents.

After the trial court conducted a hearing on December 3, 2012, it granted Houde's motion to compel the production of Liggett, Townend, and Cruz's computer hard drives, PEI and PPSI's network servers, and the native files for any document purporting to be Houde's resume within 10 days. Relators then asked the trial court to stay its order pending resolution of their "Emergency Motion for Temporary Relief" and Petition for Writ of Mandamus filed in this Court. In his

6

response, Houde asserted that the "actual examination of [the computer images]" ordered by the trial court was "narrowly tailored," and he noted that the trial court had told the parties that the examination was limited to a forensic search for: (1) current or prior versions (including deleted versions) of Houde's resume; (2) documents and artifacts that contain the same text as the resumes, which, therefore, may have been the source materials for the creation of the resumes at issue; and (3) specific email communications relating to the hiring and educational background of Houde sent prior to 2006. Houde sought, "for the sake of clarity," to have the trial court sign an amended order "that comports" with its "discussion with the parties and limitations on the forensic examination imposed" by the trial court "during the December 3, 2012 hearing regarding Plaintiff's Motion to Compel Forensic Images of Computers and Documents in Native Format."

Relators replied, attaching the affidavit of their attorney, Stewart Hoffer. They asserted that Houde had inaccurately stated that the "actual examination of [the computer images] ordered" by the trial court was "narrowly tailored," the trial court had actually told the parties "no such thing and never limited the scope of the investigation," and the order signed by the trial court "accurately reflects what" the trial court ordered Liggett, Townend, PEI and PPSI to do." They also asserted that their counsel had told the trial court at the hearing that they did not conduct a *forensic* investigation for certain communications; they had searched their hard

files, ".pst" files, and email server files for any responsive documents which they produced, and they believed that they had fully complied with the Texas Rules of Civil Procedure. Relators further asserted that the trial court was not presented with evidence that they had not produced the native files of all of Houde's resumes, which they had produced in hard copy, or not searched email files from the relevant time periods. They had searched the PEI and PPSI network servers for all native versions of the Houde resumes that were produced, and they had produced the native format ten months earlier.

Relators filed in this Court a motion for emergency relief, seeking a stay of the trial court's order compelling the production of the computer hard drives, which this Court granted, and their petition for writ of mandamus, seeking a writ requiring the trial court to vacate its order. Relators assert that the trial court did not hear any "evidence" below because it did not admit any exhibits or take live testimony during the December 3, 2012 hearing.

On December 18, 2012, the trial court conducted a hearing on discovery deadlines and an upcoming trial setting. Houde offered an amended order which the trial court signed, vacating its December 3, 2012 order. The trial court ordered that "images" rather than the actual computer hard drives be produced, and it listed the specific items that Houde's forensic computer expert was to search for, including (1) current or prior versions of Houde's resume; (2) documents

8

containing the same text as the resumes that might have been source materials for the creation of the resumes; and (3) specific email communications, sent prior to 2006, relating to Houde's hiring and educational background. The amended order also provides that deleted files or fragments without a date that are otherwise a match are to be included in the final results and Houde's forensic computer expert is to investigate for any "wiping" software or deletion of files, recover those files, and note any time periods or electronic devices that were not provided for investigation. The trial court also stayed the amended order pending the outcome of relators' petition for writ of mandamus.

Relators have filed a supplement to their mandamus petition, asserting that the trial court's December 18, 2012 amended order is substantively the same, constitutes an abuse of discretion, and "fails to cure most of the defects in the original order." In his response, Houde asserts that the trial court's December 18, 2012 amended order reflects the ruling actually made by the trial court on December 3, 2012 that had been "misunderstood or misrepresented" by relators to this Court.

**Standard of Review**

Mandamus is an extraordinary remedy that will issue only to correct a clear abuse of discretion or a violation of a duty imposed by law when there is no adequate remedy by appeal. *In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex.

9

2005) (citing *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004)); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992); *In re Taylor*, 113 S.W.3d 385, 389 (Tex. App.—Houston [1st Dist.] 2003, orig. proceeding).  A trial court abuses its discretion when it acts arbitrarily or unreasonably and without reference to any guiding rules or principles.  *See Walker*, 827 S.W.2d at 839; *In re Taylor*, 113 S.W.3d at 389.

## Discovery of Electronic Data or Information

Relators argue that the trial court abused its discretion in entering its December 18, 2012 amended order because Houde did not make a specific request for the electronic data and did not show that relators defaulted on their discovery obligation, their production was inadequate or Houde could recover relevant information, his expert is qualified, or the recovery of relevant information is feasible.[4]  Relators assert that the trial court's order effectively gives Houde's

---

[4] Both parties agree that no record was made of the December 3, 2012 hearing on Houde's motion to compel.  Houde argues that because relators have not brought forward a transcript of that hearing, the result is the absence of a complete record which creates a presumption against relators.  However, such a presumption applies only when the trial court considers evidence at a hearing.  *See Delgado v. Kitzman*, 793 S.W.2d 332, 333 (Tex. App.—Houston [1st Dist.] 1990, orig. proceeding).  Here, the mandamus record includes the sworn affidavit of relators' attorney, Stewart Hoffer, who testified that, in reference to the December 3, 2012 hearing, "After all, the trial court neither admitted any exhibits nor took live testimony during the hearing and, thus, the trial court did not hear any true 'evidence.'"  In place of a transcript of relevant testimony and exhibits introduced in an underlying proceeding, a party may provide a "statement that no testimony was adduced in connection with the matter complained."  TEX. R. APP. P. 52.7(a)(2); *see also Walker*, 827 S.W.2d at 837 n.3 (relator discharges burden by

10

expert, who is not identified in the order, "carte blanche to rummage through [relators'] storage devices in violation of *Weekley*" and has not imposed reasonable limits addressing privilege, privacy and confidentiality. *In re Weekley Homes*, 295 S.W.3d 309; *see also* TEX. R. CIV. P. 196.4.

## Specific request for correspondence, documents, and emails

Relators first assert that Houde did not make a specific request for the electronic data as required by rule 196.4 and *In re Weekley Homes*, but only for a native electronic format copy of his resume, which relators produced in native

---

filing affidavit that no evidence was presented to trial court); *Barnes v. Whittington*, 751 S.W.2d 493, 495 (Tex. 1988) ("The undisputed fact that no testimony was adduced at any of the hearings, as set forth in the affidavit of relator's counsel, satisfies the relator's burden[.]"). Although Houde makes some reference in his briefing to this Court to "evidence" considered by the trial court in deciding the motion to compel, he has not filed an affidavit controverting the statement in Hoffer's affidavit or asserting that the trial court did admit testimony and exhibits at the hearing. Nor does he provide references to any testimony or exhibits admitted at the hearing. Further, the amended order that forms the basis of this mandamus proceeding does not indicate that any evidence was admitted or considered. The order states: "The Court having considered [Houde's motion to compel], [Relators'] responses thereto, and the arguments of the parties, the Court is of the opinion that the Motion should be granted." *See Otis Elevator Co. v. Parmelee*, 850 S.W.2d 179, 181 (Tex. 1993) (stating that complaining party not required to obtain transcripts of non-evidentiary hearings in which trial court expressly bases its decision on the papers filed and counsels' arguments). Therefore, a transcript of the hearing was not necessary; "[t]his court has never required the parties to present a 'statement of facts that contains only the oration of counsel.'" *Tilton v. Moye*, 869 S.W.2d 955, 957 (Tex. 1994) (quoting *Barnes*, 751 S.W.2d at 495) (refusing to dismiss mandamus petition for failure to provide a record from hearing on motion to compel discovery when no testimony was taken).

electronic form. Houde responds that he specifically requested "the documents and hard drives" and "electronic communications and resumes."[5]

---

[5] In his Response to Relator's Petition, Houde points to his requests for production from relators for "[a]ll emails by and between [Jeffrey A. Liggett and Terence F. Townend] that mention, concern, or relate to Houde's educational background;" "[a]ll emails by and between [Jeffrey A. Liggett and Terence F. Townend] that mention, concern or relate to Houde's work history;" "[a]ll documents that [relators] rel[y upon] to support [their] contention that Houde 'intentionally misrepresented(ed) his educational qualifications' as asserted in ¶8 of the Original Answer/Counterclaim;" "[a]ll documents that [relators] rel[y upon] to support [their] contention that 'prior to PPSI and PEI permitting Houde to purchase stock in each company, Houde represented to PPSI and PEI that he had earned a Bachelor of Science Degree in Chemical Engineering from Georgia Institute of Technology' as asserted in ¶22 of the Original Answer/Counterclaim;" and "[a]ll documents that [relators] rel[y upon] to support [their] contention that Houde 'in writing made a false representation of material fact to PPSI and PEI' as asserted in ¶28 of the Original Answer/Counterclaim." Houde also points to his requests for production from PEI and PPSI in which he requested "[a]ll documents that [Pinnacle Engineering or Pinnacle Project Services] rel[y upon] to support its contention that Houde 'intentionally misrepresent(ed) his educational qualifications' as asserted in ¶8 of the Original Answer/Counterclaim" and "[a]ll documents that [Pinnacle Engineering or Pinnacle Project Services] rel[y upon] to support its contention that Houde 'fraudulently induced PEI to make (Houde) a shareholder' in Pinnacle Engineering as asserted in ¶8 of the Original Answer/Counterclaim." However, in his Motion to Compel Production of Forensic Images, Houde asserted to the trial court that his motion was based on previous requests for the production of: "[a]ll correspondence or other items by and between Pinnacle Engineering and Houde prior to October 9, 2003 that mention, concern, or related to Houde's employment or ownership in Pinnacle Engineering;" "[a]ll correspondence or other items by and between Pinnacle Engineering from October 9, 2003 to January 17, 2011, that mention, refer or concern Houde's employment or ownership in Pinnacle Engineering;" "[a]ll documents reflecting or concerning Pinnacle Engineering's investigation of Houde's educational background prior to October 9, 2003;" "[a]ll documents reflecting or concerning Pinnacle Engineering's investigation of Houde's educational background from and after October 9, 2003 to January 17, 2011;" "[a]ll emails by and between employees of Pinnacle Engineering that mention, concern or relate to Houde's educational background;" and "[a]ll emails by and between Jeffrey A. Liggett and Terence F. Townend that mention, concern or relate to Houde's educational background," as well as his request for the computer

12

Rule 196.4, which applies specifically to discovery of "data or information that exists in electronic or magnetic form," requires that the requesting party must "specifically request production of electronic or magnetic data and specify the form in which the requesting party wants it produced." TEX. R. CIV. P. 196.4. The Texas Supreme Court has held that rule 196.4 requires a specific request "to ensure that requests for electronic information are clearly understood and disputes avoided." *In re Weekley Homes*, 295 S.W.3d at 314. The responding party must produce the data that is responsive to the request and "reasonably available to the responding party in the ordinary course of business." TEX. R. CIV. P. 196.4.

Houde made requests for the production of the computer hard drives from the laptops, desktops, Dell notebooks, and tablets of Liggett, Townend, and Pete Cruz, as well as the "network server(s) utilized for electronic data" by all three men from 2009 to 2011. These requests did not inform relators of the exact nature of the information sought and do not meet the requirements of rule 196.4. *See In re Jordan*, 364 S.W.3d 425, 426 (Tex. App.—Dallas 2012, orig. proceeding) (holding that written requests merely asking for computer hard drives are insufficient under rule 196.4). Additionally, we note that Houde's request for the "network server(s) utilized for electronic data" by all three men from 2009 to 2011

---

hard drives from the desktops, laptops, and Dell notebooks of Liggett, Townend and Cruz and network server hard drives "utilized by the Defendants during the relevant period."

does not match the date range for the server hard drive image production ordered by the trial court. The amended order specifies that the image of the network server(s) for PEI and PPSI to be produced is from 2000 to 2006, but Houde's request for production specified network server data for Liggett, Townend and Cruz from 2009 to 2011 only.

Because compelling relators to turn over computer and network server hard drives without requiring Houde to identify specific discovery requests, does not comport with the requirements of rule 196.4 and *In re Weekley Homes*, we conclude that the trial court abused its discretion in granting the motion to compel.

## Production of the Computer and Network Hard Drives

The trial court's December 18, 2012 amended order requires relators to produce to Houde's forensic computer expert images from the hard drives of "any computer(s) used" by Liggett, Townend, and Cruz from December 1, 2000–2006; the network server(s) for PEI and PPSI from December 1, 2000–2006; and the native files for any document purported to be Houde's resume (Bates No. PINNACLE 00011, 000129-134, 000147-149). In this amended order, the trial court added language describing what Houde's forensic computer expert was to look for:

> It is ORDERED that Plaintiff's Forensic Computer Expert shall search the images and files listed above for: (1) current or prior versions (including deleted versions) of Mr. Houde's resume; (2) documents and artifacts that contain the same text as these resumes

and therefore may have been source materials for the creation of the resumes at issue; and (3) specific email communications relating to the hiring and educational background of Mr. Houde by Defendants prior to 2006. Deleted files and fragments may or may not have a date of activity associated with them; if no date exists with a deleted file or fragment that is a match to the search terms, the deleted file or fragment will be included in the final results without the date filter being applied.

Plaintiff's Forensic Expert shall also investigate for the existence of any wiping software or deletion of files from these systems; recover any files that have been deleted and note whether any time periods or electronic devices were not provided for investigation.

We hold that the trial court's amended order does not comply with the requirements of rule 196.4 concerning the examination of a party's electronic storage devices as outlined in *In re Weekley Homes*. In *In re Weekley Homes*, the Texas Supreme Court recognized that "[p]roviding access to information by ordering examination of a party's electronic storage device is particularly intrusive and should be generally discouraged, just as permitting open access to a party's file cabinets for general perusal would be." 295 S.W.3d at 317. The court explained,

As a threshold matter, the requesting party must show that the responding party has somehow defaulted in its obligation to search its records and produce the requested data. The requesting party should also show that the responding party's production 'has been inadequate and that a search of the opponent's [electronic storage device] could recover deleted relevant materials.' Courts have been reluctant to rely on mere skepticism or bare allegations that the responding party has failed to comply with its discovery duties. Even if the requesting party makes this threshold showing, courts should not permit the requesting party itself to access the opponent's storage device; rather, only a qualified expert should be afforded such access, and only when there is some indication that retrieval of the data sought is feasible.

15

Due to the broad array of electronic information storage methodologies, the requesting party must become knowledgeable about the characteristics of the storage devices sought to be searched in order to demonstrate the feasibility of electronic retrieval in a particular case. And consistent with standard prohibitions against 'fishing expeditions,' a court may not give the expert carte blanche authorization to sort through the responding party's electronic storage device. Instead, courts are advised to impose reasonable limits on production. Finally, federal courts have been more likely to order direct access to a responding party's electronic storage devices when there is some direct relationship between the electronic storage device and the claim itself.

*Id*. at 317–19 (internal citations omitted).

## Default on Discovery Obligations

Houde made the assertion in his motion to compel that Relators "to date . . . have not produced any hardcopy paper documents or communications from [10 years ago], and only [relators] and, upon information and belief, their, 'consulting only' computer forensic expert, have been able to view the correspondence that was actually exchanged during that time." Houde also asserted that relators had "gone to great lengths to prevent Houde from examining the most likely place that communications and documents would exist regarding the hiring of Houde – [Relators'] computers and servers."[6] However, as the court in *In re Weekley*

---

[6] Houde makes similar assertions in his response to relators' petition that he "made a showing that the information sought existed only on Relators' hard drives and servers." Houde asserts that the trial court considered evidence and heard arguments that "numerous additional versions of a purported resume of [Houde] existed on Relators' electronic storage devices that had not been produced during discovery" and the trial court's order was directed at those specific communications and unproduced versions of Houde's resume and the underlying

*Homes* explained, "courts have been reluctant to rely on mere skepticism or bare allegations that the responding party has failed to comply with its discovery duties." *In re Weekley Homes*, 295 S.W.3d at 317–18; *see also In re Harris*, 315 S.W.3d 685, 700 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding) (noting that no argument by requesting party that responding party's production had been insufficient is even less than the "mere skepticism or bare allegations" deemed insufficient in *In re Weekley Homes*).

The Texas Supreme Court has specifically rejected as insufficient similar conclusory statements made by requesting counsel that certain emails "must exist," and it held that such statements do not justify the highly intrusive method of discovery that was ordered by the trial court. *In re Weekley Homes*, 295 S.W.3d at 317–18, 320. Houde presented no evidence that relator's production has been inadequate or a search of relators' computer and network server hard drives could recover relevant materials. Relators asserted in their responses to Houde's requests for production and motion to compel that they had conducted diligent searches and produced the relevant documents found. Houde's motion made no assertion that relators' counsel's statements were false or made in bad faith. *See In re Stern*, 321 S.W.3d 828, 845 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding) (holding that requesting party did not show default when responding party agreed to

metadata. But Houde points us to no evidence presented to the trial court substantiating his assertions.

17

produce items and requesting party made no showing that representations were false or made in bad faith). And Houde's motion to compel forensic imaging did not provide the showing required in *In re Weekley Homes* that relators, as the responding parties, have somehow defaulted on their obligation to search their records and produce the requested data. 295 S.W.3d at 317. *In re Weekley Homes* also requires that the requesting party show that the responding party's production "has been inadequate and that a search of the opponent's [electronic storage device] could recover deleted relevant materials." *Id.*

Houde further asserted in his motion to compel that relators had refused to provide him access to the native files for two documents purposed to be Houde resumes that were used in depositions. Relators provided evidence in their response to Houde's motion to compel that the native format file had been produced to Houde as an attachment to an email from relators' counsel dated February 9, 2012. Houde did not provide to the trial court controverting evidence that relators had not produced the resume in native format, nor does he direct this Court to any such evidence.

Accordingly, we hold that the trial court abused its discretion in compelling relators to turn over their computer and network server hard drives without requiring Houde to demonstrate that relators defaulted on their discovery

obligations or their production had been otherwise inadequate.  *See* TEX. R. CIV. P. 196.4; *In re Weekley Homes*, 295 S.W.3d at 322.

**Feasibility of Retrieval**

Even a showing that relators did not search for relevant requested documents does not automatically mean that a search of relators' computer and network server hard drives would likely reveal the documents, or that they would be reasonably capable of recovery.  *See In re Weekley Homes*, 295 S.W.3d at 319–20.    The requesting party must demonstrate that data retrieval is feasible.  *See In re Stern*, 321 S.W.3d at 846.  The conclusory statements of Houde's counsel in his motion to compel were not enough to justify the intrusive method of discovery ordered by the trial court which gave Houde's forensic computer expert complete access to the entire hard drives of every computer used by Liggett, Townend and Cruz, as well as the PEI and PPSI's network server hard drives.  The trial court did not require Houde to demonstrate that relators' electronic information storage methodology would allow the retrieval of these documents, including deleted versions of Houde's resume, or what that retrieval will entail as required by *In re Weekley Homes* to justify the appointment of a forensic expert to examine the hard drives. 295 S.W.3d at 320.

Houde simply failed to show that retrieval of deleted copies of his resume and the emails was feasible.  Accordingly, we hold that the trial court abused its

discretion in compelling relators to turn over computer and network server hard drives without requiring Houde to demonstrate that retrieval of deleted copies of Houde's resume and emails prior to 2006 was feasible. *See* TEX. R. CIV. P. 196.4; *In re Weekley Homes*, 295 S.W.3d at 322.

**Expert Qualifications**

Houde represents to this Court that the parties had agreed on "Mr. Price" as the forensic computer expert and this was discussed and agreed upon "by the parties and the trial court during the December 3, 2012 hearing." However, Price is neither identified in the trial court's order, nor were his qualifications to conduct this forensic computer examination on relators' computer and network server hard drives identified in the trial court's order.

Even if Houde had made the requisite threshold showing that relators had not complied with their discovery obligations, the requesting party itself should not be allowed access to the opponent's storage device, but rather only a qualified expert should be given access. *See In re Weekley Homes*, 295 S.W.3d at 318. Whereas the amended order provides that Houde's forensic computer expert will do the searching on relators' computer and network server hard drives, the expert is not identified and there are no limitations or guidelines provided as to how Houde's expert would conduct the searches for Houde's resume and documents with the same text that might be source materials or email communications prior to

20

2006. *See id.* ("[A] court may not give the expert carte blanche authorization to sort through the responding party's electronic storage device."). Houde presented nothing in his motion to show that his expert is qualified to perform the searches on the specific storage devices at issue or the search methodology would likely retrieve the documents, including deleted versions of Houde's resume and emails prior to 2006. *Id.* at 321; *In re Stern*, 321 S.W.3d at 847. *In re Weekley Homes* requires Houde to demonstrate that his expert is familiar with the particularities of relators' computer and network server hard drives, he is qualified to search those hard drives, and the expert's proposed search methodology is reasonably likely to yield the information that he seeks. 295 S.W.3d at 321; *see also In re Harris*, 315 S.W.3d at 701 (noting that requesting party made no showing which, if any, of responding party's electronic storage devices could be expected to contain requested information). Houde made no such showing in his motion to compel and the trial court's amended order does not contain any such information.

Similarly, Houde has not shown that his forensic computer expert is qualified to investigate the existence of any "wiping" software or the deletion of files on relators' computer and network server hard drives. Houde has not shown that his forensic computer expert is qualified to "recover any files that have been deleted and note whether any time periods or electronic devices were not provided for investigation."

Accordingly, we hold that the trial court abused its discretion in compelling relators to produce their computer and network servers hard drives without requiring Houde to identify his forensic computer expert, his qualifications, that the expert is familiar with relators' computer and network server hard drives, and that the expert's search methodology is likely to retrieve the possibly deleted Houde resumes and emails relating to Houde prior to 2006. *See* TEX. R. CIV. P. 196.4; *In re Weekley Homes*, 295 S.W.3d at 322.

**Privilege, Privacy and Confidentiality Concerns**

The trial court's December 18, 2012 amended order did not provide guidelines as to how Houde's expert would protect relators' privacy and confidentiality or handle privileged documents. *See In re Weekley Homes*, 295 S.W.3d at 318 (courts should "impose reasonable limits on production" and "address privilege, privacy, and confidentiality concerns"). And it did not provide any mechanism through which relators could withhold from discovery any document or information that is privileged or confidential. *See id.* The amended order does not provide for the creation of a privilege log subject to in camera review by the trial court, nor does it provide for any method for screening such privileged and confidential information. Rather, it permits Houde full access to the computer and network server hard drives. Under the amended order as written, Houde would be allowed to screen any privileged or confidential material on the

22

electronic storage devices, including any computer used by Liggett, Townend and Cruz, even their personal home computers. *See In re Clark*, 345 S.W.3d 209, 213–14(Tex. App.—Beaumont 2011, orig. proceeding) (conditionally granting mandamus relief when trial court's order compelling production of computers and electronic storage devices would effectively allow requesting party to screen privileged documents).

Accordingly, we hold that the trial court abused its discretion in compelling relators to turn over their computer and network server hard drives without providing any mechanism through which Relators can withhold from discovery any documents or information that is privileged or confidential. *See* TEX. R. CIV. P. 196.4; *In re Weekley Homes*, 295 S.W.3d at 322.

## Appropriate Limitations

As noted above, permitting "access to information by ordering examination of a party's electronic storage device is particularly intrusive and should be generally discouraged, just as permitting open access to a party's file cabinets for general perusal would be." *In re Weekley Homes*, 295 S.W.3d at 317. Here, the trial court ordered the production of the image of the hard drives of "any computer" used by Liggett, Townend and Cruz. As written, the trial court has ordered the production not just of work computers, but also any personal computer used by the men. Even if Houde had made all of the requisite showings of *In re*

23

*Weekley Homes* that relators had defaulted on their discovery obligations, retrieval of data was feasible, his expert was qualified, the expert's search methodology would likely retrieve the documents sought, and the expert is familiar with relators' electronic storage devices, a court may still not give the expert "carte blanche" to sort through the responding party's electronic storage device. *In re Weekley Homes*, 295 S.W.3d at 318. Houde asserts that the trial court's amended order is "narrowly tailored" and constitutes "a specifically targeted forensic examination" directed at the discovery of specific information relevant to his claims and defenses. He further asserts that all of the parties knew that the discovery ruling was limited and directed at specific electronic files. In support of his assertions, Houde attaches email correspondence exchanged between counsel regarding a proposed forensic computer protocol after the December 3, 2012 hearing on his motion to compel. However, nothing in the amended order signed by the trial court contains any limitations on the expert's examination of relators' computer and network server hard drives. The trial court's order does not limit what searches can be conducted or what may be done with any information that is found. It merely requires that a search be conducted for all versions of Houde's resume, any possible source documents, and certain email communications prior to 2006 relating to Houde's hiring and educational background. The trial court's order should have provided search parameters limiting access to personal and

confidential information that has no possible relevance to the pending litigation. *See In re Clark*, 345 S.W.3d at 213.

Direct access to a responding party's electronic storage devices is more likely to be appropriate "when there is some direct relationship between the electronic storage device and the claim itself." *In re Weekley Homes*, 295 S.W.3d at 317–19 (citing cases where employers sued former employees for misuse of company computers as examples of when close relationship between claims and defendant's computer equipment justified production of the computers themselves). Although Houde suggests that he is justified in gaining direct access because he is a former shareholder of PEI and PPSI, there is no direct connection between his claims and the computers to which he seeks access that could justify the production of images of the computer and network server hard drives.

Accordingly, we hold that the trial court abused its discretion in compelling relators to turn over their computer and network server hard drives without any limitations on Houde's forensic computer expert. *See* TEX. R. CIV. P. 196.4; *In Weekley Homes*, 295 S.W.3d at 322.

## Inadequate Appellate Remedy

Mandamus relief is available when a trial court compels production of electronic data and information beyond the permissible bounds of discovery. *See In re Weekley Homes*, 295 S.W.3d at 322; *In re Am. Optical Corp.*, 988 S.W.2d 711, 714 (Tex. 1998). The trial court's amended order compelling discovery in this case exceeds the permissible bounds of discovery. Moreover, relators have no adequate appellate remedy because an appellate court will not be able to remedy the trial court's error in ordering such an intrusive search without the procedural productions outlined in *In re Weekley Homes*. *See In re Prudential Ins.*, 148 S.W.3d 124, 135–36.

## Conclusion

We conditionally grant relators' petition for writ of mandamus and direct the trial court to vacate its December 18, 2012 amended order. We are confident the district court will promptly comply, and our writ will issue only if it does not.

Terry Jennings
Justice

Panel consists of Justices Jennings, Bland, and Massengale.

26